JOURNAL ENTRY AND OPINION
In his second appeal, Lee Woodard, pro se, appeals from a decision of the Cleveland Municipal Court entered in favor of Oliver Spellman, Director of Parks, Recreation and Properties for the City of Cleveland, in connection with his claims for breach of contract and fraudulent concealment in the disinternment of his mother's grave at Highland Cemetery. On appeal, he assigns the following as errors for our review:
 I. THE TRIAL COURT ERRED BY OVERLOOKING CLEAR, UNEQUIVOCAL, AND CONVINCING NEW EVIDENCE, CONTAINED IN A TRANSCRIPT OF PROCEEDINGS, SUBMITTED UNDER THE CATCH-ALL PROVISIONS OF CIV.R. 60(B)(5), OF THIRD PERSON FRAUD UPON THE COURT BY THE REV. EUGENE WARD'S COOPERATION, ON HIS PART, IN A SCHEME TO PERPETUATE A MISREPRESENTATION OF A MATERIAL FACT WHERE PROOF OF THAT FACT WOULD HAVE THE EFFECT OF REFUTING ONE OF THE ESSENTIAL ELEMENTS OF A DEFENSE ASSERTED BY THE DEFENDANT; A MISREPRESENTATION OF A MATERIAL FACT UPON WHICH OUTCOME OF LITIGATION DEPENDED UPON.
 II. THE CHIEF MAGISTRATE OF THE TRIAL COURT, IN DENYING AND OVERULING (SIC) THE PLAINTIFF'S OBJECTIONS, BASED HER DECISION UPON THE RECOMMENDATIONS (SIC) OF A LAW CLERK WHOSE PLEADINGS AND RECOMMENDATIONS ARE BIASED AGAINST THE PLAINTIFF/APPELLANT AND PARTIAL TOWARDS THE DEFENDANT/APPELLEE, AS EXEMPLIFIED BY SEVERAL KEY DISTORTIONS OF FACT WHICH SLANT THE BALANCE UNFAIRLY AGAINST THE PLAINTIFF IN FAVOR OF THE DEFENDANT. (APPELLANT DWELLS ON THIS AT LENGTH (SIC) IN HIS ARGUMENT (SIC) OF THE LAW SECTION OF THIS BRIEF OF APPEAL)
 III. TRIAL COURT MAGISTRATE ROBIN LAINE ERRED IN THAT SHE OVERLOOKED THE FACT THAT THE SUBSTANTIAL FACT OF THE CONVINCING EVIDENCE OF 3RD PERSON FRAUD AND MISREPRESENTATION UPON THE COURT WAS ENTERED INTO THE NEW RECORD VIA THE NEW EVIDENCE (THE TRANSCRIPT OF PROCEEDINGS CONSISTING OF THE DEFENDANT'S DIRECT EXAMINATION BY HIS OWN COUNSEL UNDER OATH, WHICH ALLUDES TO REV. WARD'S ROLE IN THE MATTER) PURSUANT TO THE CATCH-ALL-INTENDED PROVISION OF CIV.R. 60(B)(5) ON JAN. 14, 2000 IN PLAINTIFF'S MOTION TO VACATE DUE TO FRAUD ON THE COURT; AND THUS WAS RAISED FOR THE FIRST TIME IN THE JAN. 14TH, 2000 MOTION, AND AS SUCH WAS THUS AVAILABLE FOR MAGISTRATE LAINE'S CONSIDERATION AT THE TIME OF THE MAR. (SIC) 15, 2000 MOTION TRIAL HEARING. ACCORDINGLY, HER RULINGS THAT "PLAINTIFF'S ARGUMENTS (SIC) WERE ARGUMENTS (SIC) "RE-RAISED AND ALREADY RULED UPON PREVIOUSLY" ARE FLAWED AND, FRANKLY, PUZZLING. PLAINTIFF IS NOT RESPONSIBLE FOR MAGISTRATE'S LACK OF DILIGENCE (SIC), FOR HER PART IN LITIGATING THE ISSUE ONCE IT IS RAISED BY THE PLAINTIFF, AS IT WAS ON 3-15-00. (APPELLANT STATES THIS MOST RESPECTFULLY, HE WISHES TO ADD, TO THE HONORABLE COURT.)
 IV. THE TRIAL COURT ERRED ON THREE VITAL ADDITIONAL KEY POINTS:
 (A) ASSUMING ARGUENDO THAT REV. WARD DID ADMIT THAT HE WAS ALSO ACTING AS A CHAPLAIN FOR THE CITY WHEN HE AGREED TO BE PRESENT AT THE "PRELIMINARY INSPECTION," (WHICH SECRETLY PRECEDED THE "OFFICIAL" INSPECTION BY 24 HOURS), FOR VERIFICATION PURPOSE, MAGISTRATE BELCHER, AS A LAWYER HERSELF, SHOULD HAVE INSTANTLY RECOGNIZED THE CONFLICT OF INTEREST AND DISQUALIFIED BOTH HIS WITNESS AND HIS TESTIMONY ON THE SPOT. CONVERSELY, IF REV. WARD FAILED TO DISCLOSE THOSE FACTS (AND DISQUALIFY HIMSELF ON THE GROUNDS THAT, AS SUCH, THIS CONFLICT OF INTEREST DISQUALIFIED HIM AS AN IMPARTIAL THIRD PARTY WITNESS) THAT FACT WOULD, IF ALLOWED TO STAND, HAVE WORKED A FRAUD UPON THE COURT, WHICH IN TURN PLACES THE ACCURACY OF THE MAGISTRATE'S KEY FINDING THAT PLAINTIFF RECEIVED (SIC) A GRAVE INSPECTION THAT VERIFIED THAT PLAINTIFF'S MOTHER WAS BURIED IN THE PROPER LOCATION IN SERIOUS REASONABLE DOUBT, BECAUSE THAT BELIEF WAS BASED UPON TESTIMONY GIVEN AND TAINTED BY FRAUD AND MISREPRESENTATION AS TO REV. WARD'S ROLE IN THE MATTER.
 (B) THE TRIAL COURT MAGISTRATE LAINE ERRED IN FAILING TO EVEN ATTEMPT TO SUBPOENA REV. WARD (OR EVEN, AT LEAST, DEFENDANT SPELLMAN) TO GIVE AN ACCOUNT BEFORE THE COURT, IN THE LIGHT OF THE NEW EVIDENCE OF FRAUD UPON THE COURT, AS TO WHY WAS THERE A NEED TO MISREPRESENT THE REV. WARD'S WITNESS AS "INDEPENDENT" AND IMPARTIAL FOR VERIFICATION PURPOSE ON AUG. 6, 1997 WHEN, IN FACT, IT WAS NOT.
 (C) MAGISTRATE ROBIN LAINE ERRED IN DETERMINING THAT PLAINTIFF WAS BARRED FROM RAISING WHAT SHE CONSIDERED WERE "THE SAME CLAIMS AND ARGUMENTS (SIC) MADE AND RULED UPON IN THE COURT OF APPEALS RULING OF JULY 15, 1999" BECAUSE PLAINTIFF'S ARGUMENT (SIC) RAISED OF 3RD PERSON FRAUD UPON THE COURT (FIRST ON JAN. 14, 2000 AND AGAIN ON MAR. (SIC) 15, 2000) WAS NEVER RAISED, HEARD OR ARGUED BEFORE THE COURT OF APPEALS PRIOR TO JAN. 14, 2000, AND AS SUCH, IT WOULD BE IMPOSSIBLE TO CLASSIFY THAT ARGUMENT (SIC) AS A "RE-RAISED-PRIOR JUDGED" CLAIM BARRED BY `RES JUDICATA'.
Having reviewed the arguments of the parties and the pertinent law, we affirm the judgment of the trial court.
The facts of this case as set forth in Woodard v. Spellman[1] are as follows. Woodard believed the City of Cleveland buried his mother in the wrong grave at Highland Cemetery. He contacted Spellman, expressed his concern, and requested an opportunity to inspect his mother's grave site. Spellman advised Woodard the inspection would cost $675. Woodard agreed to pay the fee and requested his family be present for the inspection.
On August 6, 1997, one day prior to the agreed upon inspection, Spellman instructed cemetery employees to uncover enough dirt from the grave site to confirm the decedent's initials on the burial vault. On that date, Woodard, who had come to visit his mother's grave, noticed it had been partially excavated. Woodard returned the following day, the date of the scheduled excavation, with members of his family, Fox 8 I-Team reporter, Carl Monday, and a cameraman. The city employees removed the remainder of the dirt, revealing the city had properly buried his mother.
On August 15, 1997, Woodard filed a complaint in the Cleveland Municipal Court alleging a breach of contract in that the grave inspection had actually occurred the previous day and requested the return of the $675 fee he had paid. The court referred the matter to a magistrate who, after conducting a trial, recommended Spellman's motion to dismiss be granted. The court thereafter adopted the magistrate's report and dismissed the complaint. On the same day, Woodard filed objections to the magistrate's report, which the court overruled.
Woodard then filed an appeal with this court; however, we could not review the assignments of error presented due to Woodard's failure to file a transcript of the lower court proceedings. As a result, we affirmed the judgment of the trial court.
In this second appeal, Woodard argues the transcript, which he has now filed, constitutes new evidence. At the outset, we note that in the interest of justice and to provide the Woodard family with peace of mind, we reviewed the partial transcript filed with this court. The transcript filed contains only the testimony of Spellman, who testified the area exposed on August 6, 1997, was minor compared to the three hour extraction of dirt completed the following day, August 7, 1997, which was the day Woodard contracted to have the excavation completed. Spellman further testified on August 7, 1997, the contracted date, the top and sides of the vault were fully exposed and the headstone was removed for its protection. On August 6, 1997, however, only the end of the vault was exposed, which is where the funeral director had indicated letters evidencing Mrs. Woodard's name would be located.
During oral argument, Woodard caused us to pause and ponder whether any inspection had occurred on the 7th. After reviewing the transcript, our concerns were answered and we were struck by the testimony of Spellman. Spellman testified the family had informed him of a rose located on the vault. There was also question of whether some pink coloring was on the vault. The family insisted the cemetery personnel dig until that was exposed and in fact, the pink coloring was on the vault. Having reviewed the facts to our satisfaction, we are compelled to resolve this case under the doctrine of res judicata.
The doctrine of res judicata bars the issues raised in this second appeal from consideration. Under the doctrine of res judicata, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.[2] Res judicata
operates to bar litigation of "`all claims which were or might have been litigated in a first lawsuit.'"[3]
In order for a claim to be barred on the grounds of res judicata, the new claim must share three elements with the earlier action: (1) identity of the parties or their privies; (2) identity of the causes of action; and (3) a final judgment on the merits.[4]
In this appeal, Woodard attempts to re-argue the same matters that were brought and could have been brought in his initial appeal. This court has previously determined the final judgment of the trial court is affirmed. Therefore, Woodard is barred by the doctrine of res judicata from arguing these matters for a second time. Accordingly, these assignments of errors are overruled and the judgment of the trial court is affirmed.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cleveland Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., J. and JAMES J. SWEENEY, J., CONCUR.
[1] 1999 Ohio App. LEXIS 2793, (June 17, 1999) Cuyahoga App. No. 74347, unreported.
[2] Grava v. Parkman Twp. (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, quoting Rogers v. Whitehall (1986), 25 Ohio St.3d 67, 494 N.E.2d 1387.
[3] (Emphasis omitted.) Id. at 382, 653 N.E.2d at 229, quoting Natl.Amusements, Inc. v. Springdale (1990), 53 Ohio St.3d 60, 62,558 N.E.2d 1178, 1180.
[4] Horne v. Woolever (1959), 170 Ohio St. 178, 163 N.E.2d 378, citing, DK Properties Crystal Lake v. Mutual Life Ins. Co. of New York
(C.A., 1997), 112 F.3d 257.